**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**CINGLEVUE INTERNATIONAL
PTY, LTD.,**

                  **Plaintiff,**              1:13-cv-818
                                                        (GLS/RFT)
                  **v.**

**EXO PLATFORM NA, LLC,**

                  **Defendant.**
_____

| **APPEARANCES:** | **OF COUNSEL:** |
|---|---|
| **FOR THE PLAINTIFF:**<br>Squire, Patton Law Firm<br>2550 M Street, N.W.<br>Washington, DC 20037 | RICHARD J. OPARIL, ESQ. |
| **FOR THE DEFENDANT:**<br>Olshan, Frome Law Firm<br>65 East 55th Street<br>New York, NY 10025 | KYLE C. BISCEGLIE, ESQ.<br>MASON A. BARNEY, ESQ. |

**Gary L. Sharpe
Chief Judge**

## MEMORANDUM-DECISION AND ORDER

### I. Introduction

Plaintiff CingleVue International Pty Ltd. commenced this diversity action against defendant eXo Platform NA, LLC, alleging New York common law causes of action for fraud, rescission, and breach of the

implied covenants of good faith and fair dealing, as well as a claim pursuant to California's unfair competition and false advertising law.¹ (*See generally* Am. Compl., Dkt. No. 11.) eXo filed a pre-answer motion, pursuant to Fed. R. Civ. P. 12(b)(6), seeking dismissal of all of CingleVue's claims. (Dkt. No. 14.) For the reasons that follow, the motion to dismiss is granted.

## II. Background²

This dispute arises out of a business transaction between CingleVue, a technology company that provides software systems integration services to its clients, (Am. Compl. ¶ 6), and eXo, which provides online platforms and services for managing web-based content and related services, (*id.* ¶ 8). At some time in 2011, the portal technology being used by CingleVue at the time became unable to meet all of CingleVue's technical requirements, so CingleVue sought out a new social collaboration platform from eXo. (*Id.* ¶ 9.) The eXo platform was marketed and advertised as capable of integration with certain technologies and services that were used by CingleVue. (*Id.* ¶ 10.) Additionally, in October

---

¹ *See* Cal. Bus. & Prof. Code § 17200 (West 2014).

² Unless otherwise noted, the facts are drawn from CingleVue's amended complaint and presented in the light most favorable to it.

2

2011, CingleVue communicated its specific requirements to eXo representatives, who expressed their willingness to provide CingleVue with eXo's platform product, and indicated that their product could meet CingleVue's requirements. (*Id.* ¶¶ 11-12.)

Ultimately, the parties entered into a partnership agreement, executed on November 17, 2011, under which CingleVue paid eXo approximately $125,000 in exchange for a license from eXo to install and use eXo's platform (hereinafter "the product") on CingleVue computers. (*Id.* ¶¶ 9, 14; Dkt. No. 11, Attach. 1 at 49-62.)[3] That same day, eXo provided the product to CingleVue. (Am. Compl. ¶ 17.a.) The agreement permitted CingleVue to incorporate eXo's software into CingleVue's applications, thus creating a bundled product, and CingleVue could sublicense and distribute eXo's product only as part of this bundle. (*Id.* ¶ 15.) As a term of the agreement, the parties agreed that eXo disclaimed certain warranties, including "warranties of merchantability, title, non-infringement, quiet enjoyment, accuracy of data, system integration, course

---

[3] Because the parties' partnership agreement is attached and integral to the complaint, which alleges a breach of the agreement, and closely related claims, the court considers it in deciding the merits of eXo's motion. *See Global Network Commc'ns, Inc. v. City of N.Y.*, 458 F.3d 150, 156-57 (2d Cir. 2006); *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153-54 & 153 n.4 (2d Cir. 2002).

3

of performance or fitness for a particular purpose." (Dkt. No. 11, Attach. 1 at 50.) Additionally, the agreement provided that CingleVue was receiving the product "as is," and eXo did not "guarantee or warrant that the use of the product will be uninterrupted or error free." (*Id.*) Further, the agreement stated that "[n]o claim or action, regardless of form, arising out of this [a]greement . . . may be brought by either party more than one (1) year after the cause of action has accrued." (*Id.* at 52.)

Beginning in November 2011, shortly after receiving the product, CingleVue experienced difficulties with integrating the product into a bundle; CingleVue alleges that the product as provided by eXo was "woefully inadequate for the tasks for which CingleVue licensed the [p]roduct." (*Id.* ¶¶ 16-17.) CingleVue reported these issues to eXo, and upon learning of these problems, eXo suggested that CingleVue agree to purchase an upgraded product from eXo; CingleVue alleges that "eXo represented that the [u]pgraded [p]roduct would resolve the problems and deficiencies in the [p]roduct and allow CingleVue to use the [u]pgraded [p]roduct for the intended purpose." (*Id.* ¶ 19.) The parties subsequently entered into an amended partnership agreement on January 26, 2012, with all terms of the original agreement remaining the same except for the

4

addition of the upgraded product.  (*Id.* ¶ 20; Dkt. No. 1, Attach. 1 at 80.)

The upgraded product "was still woefully inadequate" for CingleVue's purposes, and throughout 2012, beginning in February 2012, CingleVue communicated several issues to eXo regarding the upgraded product's failures.  (Am. Compl. ¶ 22.)  CingleVue representatives communicated with eXo support teams "at least twenty times by telephone and e-mail messages" during September and October 2012, but the parties were unable to determine a solution.  (*Id.* ¶¶ 23, 25-26.)  CingleVue alleges that these problems caused it to "delay[ its] contractual delivery of its solution to an independent school system customer."  (*Id.* ¶ 27.)

On November 30, 2012, CingleVue requested a refund of all fees paid to eXo.  (*Id.* ¶ 28.)  CingleVue asserts that eXo "knew or should have known of the true . . . limitations of the [p]roduct and [u]pgraded [p]roduct," and did not disclose these limitations to CingleVue before the partnership agreement was signed, and that CingleVue would not have entered into the agreement had it been aware of the limitations of the product and the upgraded product.  (*Id.* ¶ 29.)  Ultimately, CingleVue commenced this action against eXo by filing a complaint on July 10, 2013.  (Compl., Dkt. No. 1.)  In response to eXo's pre-answer motion to dismiss the complaint,

5

(Dkt. No. 7), CingleVue filed an amended complaint, asserting four causes of action, including fraud, rescission, breach of the implied covenants of good faith and fair dealing, and a claim pursuant to California's unfair competition and false advertising laws, (*see generally* Am. Compl.).

### III. Standard of Review

The standard of review under Fed. R. Civ. P. 12(b)(6) is well settled and will not be repeated here. For a full discussion of the standard, the court refers the parties to its prior decision in *Ellis v. Cohen & Slamowitz, LLP*, 701 F. Supp. 2d 215, 218 (N.D.N.Y. 2010).

### IV. Discussion[4]

eXo asserts in its motion to dismiss that CingleVue's common law contract claims are subject to dismissal because they are untimely pursuant to the parties' agreement. (Dkt. No. 14, Attach. 9 at 9-11.) Additionally, eXo argues that CingleVue's California statutory claims should be dismissed for lack of standing and because CingleVue has not alleged adequate injury. (*Id.* at 21-25.) CingleVue argues that the shortened limitations period agreed to by the parties is not binding here, and that its

---

[4] The parties have agreed that "[a]ny action related to th[e partnership a]greement will be governed by New York law and controlling U.S. federal law without regard for its choice of law provisions." (Dkt. No. 11, Attach. 1 at 52; Dkt. No. 14, Attach. 9 at 10 n.5; Dkt. No. 17 at 9.)

claim pursuant to the California unfair competition and false advertising laws is proper. (Dkt. No. 17 at 9-13, 21-24.) For the reasons that follow, eXo's motion is granted, and the complaint is dismissed.

**A.    Timeliness**

eXo first argues that CingleVue's common law claims are time barred because the parties had explicitly agreed in the partnership agreement to a shortened, one-year limitations period. (Dkt. No. 14, Attach. 9 at 9-11.) In response, CingleVue argues that its common law claims are not time barred because claims for fraud in the inducement are not subject to shortened statutes of limitations, even if a contract between the parties contains a shorter limitations period. (Dkt. No. 17 at 9-13.) Additionally, CingleVue argues that eXo should be estopped from pursuing a statute of limitations defense. (*Id.*) The court agrees with eXo, and finds that CingleVue's claims here are untimely pursuant to the parties' agreement.

Generally, under New York law, actions for the breach of a sales contract are subject to a four-year limitations period, *see* N.Y. U.C.C. § 2-725(1), while fraud claims must be brought within the greater of six years from accrual or two years from when the plaintiff discovered or could have reasonably discovered the alleged fraud, *see* N.Y. C.P.L.R. § 213(8).

7

Actions seeking the equitable remedy of rescission of a contract are usually governed by the six-year statute of limitations of C.P.L.R. § 213(1). *See Hoffman v. Cannone*, 206 A.D.2d 740, 740-41 (3d Dep't 1994); *Brown v. Tonawanda Hous., Inc.*, 123 A.D.2d 493, 494 (4th Dep't 1986). However, parties may contract for a shorter limitations period. *See* N.Y. C.P.L.R. § 201 ("An action . . . must be commenced within the time specified in this article unless . . . a shorter time is prescribed by written agreement"); N.Y. U.C.C. § 2-725(1) ("By . . . agreement the parties may reduce the period of limitation [for a breach of contract action] to not less than one year"). "[A]n agreement which modifies the Statute of Limitations by specifying a shorter, *but reasonable*, period within which to commence an action is enforceable." *Exec. Plaza, LLC v. Peerless Ins. Co.*, 22 N.Y.3d 511, 518 (2014) (internal quotation marks and citation omitted). The New York Court of Appeals has "enforced contractual limitation periods of one year." *Id.* "[U]nder New York law '[f]ailure to comply with a contractual limitations period will subject the action to dismissal, absent proof that the limitations provision was obtained through fraud, duress, or other wrongdoing.'" *Infectious Disease Solutions, P.C. v. Synamed, LLC*, No. 07-CV- 5423, 2012 WL 1106847, at *9 (E.D.N.Y. Mar. 30, 2012) (quoting *Allman v. UMG*

*Recordings*, 530 F. Supp. 2d 602, 606 (S.D.N.Y. 2008)); *see Kozemko v. Griffith Oil Co., Inc.*, 256 A.D.2d 1199, 1200 (4th Dep't 1998) (upholding a shorter limitations period provided by parties' contract because plaintiffs "failed to demonstrate any fraud, duress or misrepresentation regarding the agreement to shorten the period of limitations").

"As a general rule, under [N.Y. C.P.L.R.] § 203(a), a claim for fraudulent inducement in the execution of an agreement 'accrues upon the execution of the agreement,' i.e., the time the fraud was committed." *Von Hoffmann v. Prudential Ins. Co. of Am.*, 202 F. Supp. 2d 252, 262 (S.D.N.Y. 2002) (quoting *In re Estate of Blake*, 282 A.D.2d 905, 906 (3d Dep't 2001)). Similarly, the statutory period for claims seeking rescission of a contract also begins to run upon execution of the contract. *See Brown*, 123 A.D.2d at 494; *Van Dussen-Storto Motor Inn, Inc. v. Rochester Tel. Co.*, 1978, 63 A.D.2d 244, 250 (4th Dep't 1978). Breach of contract actions, including those alleging a breach of the implied covenants of good faith and fair dealing, accrue at "the time of the breach[, even if] no damage occurs until later." *Ely-Cruikshank Co., Inc. v. Bank of Montreal*, 81 N.Y.2d 399, 402 (1993) (internal quotation marks and citations omitted).

Here, the amended complaint states that the partnership agreement

between the parties was executed on November 17, 2011, and the amended agreement was executed on January 26, 2012.  (Am. Compl. ¶¶ 14, 20.)  Consequently, CingleVue's fraud and rescission claims accrued at the latest on January 26, 2012.  With respect to CingleVue's claim for breach of good faith, it alleges that "eXo owed CingleVue duties under the implied covenant of good faith and fair dealing in connection with the transaction that culminated in the [p]artnership [a]greement," (*id.* ¶ 50), and that eXo failed to supply CingleVue with a product that could be integrated into a bundle as provided by the agreement, (*id.* ¶ 51).  Therefore, it would appear that any breach of the contract occurred when the allegedly defective or inadequate product was delivered, which was November 17, 2011.  (*Id.* ¶ 17a.)  Although it is unclear from the allegations in the amended complaint exactly when the upgraded product was delivered, the parties' amended partnership agreement was executed on January 26, 2012, and CingleVue's pleadings indicate that it lodged complaints with eXo about the upgraded product beginning on February 3, 2012.  (*Id.* ¶¶ 20, 22.)

    As mentioned above, the parties' partnership agreement provided that "[n]o claim or action, regardless of form, arising out of this [a]greement

. . . may be brought by either party more than one (1) year after the cause of action has accrued." (Dkt. No. 11, Attach. 1 at 52.) CingleVue initially commenced this action on July 10, 2013, (Compl.), which is more than one year after each of the contract-related causes of action accrued, as discussed above. Thus, unless CingleVue can demonstrate a reason why the agreed-upon shorter limitations period should not apply, its common law claims are time barred.

In its argument, CingleVue relies upon *Superior Technical Res., Inc. v. Lawson Software, Inc.*, 17 Misc. 3d 1137(A), 2007 WL 4291575 (N.Y. Sup. Ct. 2007). That case provides that:

> [t]he law is well-settled that, notwithstanding that a contract between the parties contains a shorter Statute of Limitations, where a party has stated a cause of action for fraud in the inducement with regard to that contract, the fraud Statute of Limitations should be applied rather [than] that contained in the contract which the party seeks to rescind.

*Id.* at *13. However, it is not clear that this proposition is "well-settled," as the cases that *Superior* cites as authority do not appear to support such a broad holding. In fact, neither of the cases cited by *Superior* even involved an agreement by the parties to shorten the applicable statute of limitations. *See Triangle Underwriters, Inc. v. Honeywell, Inc.*, 604 F.2d 737, 748 (2d

11

Cir. 1979); *H. Novinson & Co., Inc. v. City of N.Y.*, 53 A.D.2d 831, 831 (1st Dep't 1976). Instead, these cases merely discuss the distinction between claims for fraud in the inducement and ordinary breach of contract claims, and determine whether the fraud or breach of contract limitations period should apply to such claims. Therefore, the court is not persuaded by this argument. Rather, in order to invalidate the term of the parties' agreement providing for a one-year limitations period, CingleVue would have to allege that eXo engaged in "fraud, duress or misrepresentation *regarding the agreement to shorten the period of limitations*." *Kozemko*, 256 A.D.2d at 1200 (emphasis added). Here, while CingleVue generally alleges that it was fraudulently induced to enter the contract due to eXo's misrepresentations about the nature and quality of its products, there are no allegations that the limitations provision of the agreement was procured by fraud. (*See generally* Am. Compl.) The parties' agreement to reduce the limitations period to one year for any claims arising out of the partnership agreement(s) is therefore binding here.

In a further attempt to avoid the shorter limitations period, CingleVue argues that eXo should be estopped from arguing the untimeliness of CingleVue's suit because CingleVue was induced by eXo to refrain from

12

filing a timely action. (Dkt. No. 17 at 10-11.) Specifically, it argues that, by providing continuing technical support in an attempt to fix the issues with the products, eXo caused CingleVue to delay in commencing its action. (*Id.*) eXo argues that there are no allegations that anything eXo did was an attempt to keep CingleVue from filing a timely action. (Dkt. No. 20 at 3.)

Under the estoppel doctrine, "a defendant may be estopped to plead the Statute of Limitations where [the] plaintiff was induced by fraud, misrepresentations or deception to refrain from filing a timely action." *Simcuski v. Saeli*, 44 N.Y.2d 442, 448-49 (1978); *see Kaufman v. Cohen*, 307 A.D.2d 113, 122 (1st Dep't 2003). The plaintiff must also "demonstrate reasonable reliance on the defendant's misrepresentations." *Zumpano v. Quinn*, 6 N.Y.3d 666, 674 (2006). In other words, the plaintiff must allege that "subsequent and specific actions by defendants somehow kept [it] from timely bringing suit." *Id.*

Here, the amended complaint alleges only that CingleVue relied on eXo's alleged misrepresentations in entering into the partnership agreement and the amended agreement, and not that it relied on them in deciding not to commence a civil action against eXo. (Am. Compl. ¶ 29.) There is nothing beyond mere argument in CingleVue's memorandum of

13

law to support that eXo's provision of continuing technical support constituted a misrepresentation, or that it was made in an attempt to fraudulently prevent CingleVue from filing suit, instead of simply "to resolve the [p]roduct's problems and deficiencies." (Dkt. No. 17 at 11.) Although CingleVue argues that it later determined eXo's representations about the upgraded product's ability to resolve the initial product's problems to be false, in that the upgraded product was ultimately unsuccessful in solving CingleVue's problems, CingleVue has not alleged in the complaint, nor has it provided any evidence with its response to the motion to dismiss, that would indicate that at the time the representations were made, they were made in order to keep CingleVue from commencing an action, or that these representations are what caused CingleVue to not file suit earlier. As CingleVue was aware of the problems with the product and upgraded product almost immediately after signing the agreement and amended agreement, respectively, (Am. Compl. ¶¶ 17, 22), there is no evidence that it was prevented it from bringing suit prior to July 2013. The court thus finds CingleVue's arguments unavailing, and therefore grants eXo's motion to dismiss CingleVue's claims for fraud, rescission, and breach of the implied covenants of good faith and fair dealing as untimely, pursuant to

14

the parties' agreement. *See Infectious Disease Solutions*, 2012 WL 1106847, at *8. ("The court finds, based on the plain and unambiguous terms of the contract, that [the p]laintiff brought its contract claims against [the defendant] after the mutually agreed upon one-year limitation period expired, in contravention of the express contract language. Accordingly, [the p]laintiff's claims are time-barred.").

## B. California Unfair Competition Claim

With respect to CingleVue's remaining claim under the California unfair competition and false advertising law, eXo argues that such a claim is not proper under the circumstances of this case, and that CingleVue, as a non-California resident, lacks standing to bring this claim. (Dkt. No. 14, Attach. 9 at 21-25.) CingleVue, in response, argues primarily that it has adequately alleged the elements required by the statute, and also that there is sufficient connection with California to give CingleVue standing to assert this claim. (Dkt. No. 17 at 21-24.) The court agrees with eXo, and this claim is dismissed.

eXo argues that CingleVue, as a non-California resident, does not have standing to maintain a claim pursuant to the California UCL. (Dkt. No. 14, Attach. 9 at 23-25.) Notably, "section 17200 does not support claims

15

by non-California residents where none of the alleged misconduct or injuries occurred in California." *Churchill Vill., L.L.C. v. Gen. Elec. Co.*, 169 F. Supp. 2d 1119, 1126 (N.D. Cal. 2000) (citing *Norwest Mortg., Inc. v. Superior Court*, 72 Cal. App. 4th 214, 222 (1999)), *aff'd sub nom. Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566 (9th Cir. 2004). Here, "any injuries attributable to [CingleVue] took place in New York, such that they may not be the predicate for a suit under the California statute." *Bezuszka v. L.A. Models, Inc.*, 04 Civ. 7703, 2006 WL 770526, at *16 (S.D.N.Y. Mar. 24, 2006). Further, although CingleVue generally alleges that eXo's principal place of business is California, (Am. Compl. ¶ 2), and that it sells and distributes products to consumers in California, (id. ¶ 41), it has not alleged with sufficient detail that of any of the specific misrepresentations alleged in the amended complaint originated in, or were communicated from, California. *See In re Toyota Motor Corp.*, 785 F. Supp. 2d 883, 917-18 (C.D. Cal. 2011) (dismissing a non-California plaintiff's UCL claim because the complaint did "not allege[ ] with sufficient detail that the point of dissemination from which advertising or promotional literature *that they saw or could have seen* is California").

Additionally, California's unfair competition laws (UCL) prohibit "any

16

unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200. In order to state a claim under § 17200, a plaintiff must allege that "members of the public are likely to be deceived" by a defendant's unlawful business practice. *Quacchia v. DaimlerChrysler Corp.*, 122 Cal. App. 4th 1442, 1453 (Cal. Ct. App. 2004) (internal quotation marks and citation omitted); *see Carlin v. DairyAmerica, Inc.*, 978 F. Supp. 2d 1103, 1117 (E.D. Cal. 2013) ("It is necessary under the 'fraudulent' prong [of the UCL] to show deception to some members of the public, or harm to the public interest, and not merely to the direct competitor or other non-consumer party to a contract." (internal quotation marks and citation omitted))*; Rosenbluth Int'l, Inc. v. Superior Court*, 101 Cal. App. 4th 1073, 1077 (Cal. Ct. App. 2002) ("[A] UCL action based on a contract is not appropriate where the public in general is not harmed by the defendant's alleged unlawful practices."). Thus, an action pursuant to the unfair competition laws "is not an all-purpose substitute for a tort or contract action." *Cortez v. Purolator Air Filtration Prods. Co.*, 999 P.2d 706, 712 (Cal. 2000).

Here, CingleVue has not alleged any injury to, or deception of, the "general public." The misrepresentations alleged in this action occurred

17

only to CingleVue, in direct response to CingleVue communicating its "particular requirements for the software it was trying to purchase." (Am. Compl. ¶¶ 11, 12, 14.) CingleVue alleges that, although it was assured the product would work, it "was woefully inadequate *for the tasks for which CingleVue licensed the [p]roduct*." (*Id.* ¶ 17 (emphasis added).) Consequently, "the public was not privy to the misrepresentation and the public suffered no alleged direct harm." *Carlin*, 978 F. Supp. 2d at 1117. CingleVue thus cannot allege a harm to the general public, and an action pursuant to the UCL is not proper here. *See Bezuszka v. L.A. Models, Inc.*, 04 Civ. 7703, 2006 WL 770526, at *17 (S.D.N.Y. Mar. 24, 2006). eXo's motion is therefore granted with respect to CingleVue's unfair competition claim.

## V. Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that eXo's motion to dismiss (Dkt. No. 14) is **GRANTED**; and it is further

**ORDERED** that CingleVue's amended complaint (Dkt. No. 11) is **DISMISSED**; and it is further

**ORDERED** that the Clerk close this case; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

July 10, 2014
Albany, New York

Gary L. Sharpe
Chief Judge
U.S. District Court